Mr. Justice Lipscomb
delivered the opinion of the court.
The appellant filed his petition against the defendants, in *436 substance as follows, i. e.: “That on the 8th day of March, 1844, John J. Yining,.since dead, being indebted to petitioner the sum of seven hundred and thirty-five dollars and fifty cents, payable on or before the first day of January thereafter, with ten per cent, interest upon the same, from the time of payment, to secure the payment of the said sum at the said time, the said John J. Yining mortgaged to petitioner a certain tract of land situated in the town of Clarksville in said county, being lot No. 7, in block No. 3, in the said town, which deed of mortgage was on the day of the execution thereof duly presented to the recorder of said county for register, and in due time recorded; that during the year 1844 the said John J. Yining departed this life intestate, leaving as his heirs at law, his mother, Martha Yining, and his father, Wade H. Yining; the latter was appointed administrator of the estate of the said John S. Yining, which office of administrator he still holds; that within twelve months after the said Wade became administrator, the said mortgage deed was duly presented to him, and that on the 26th of July, 1847, the said plaintiff made oath that the amount for which the said mortgage deed was given was unpaid, and that on the said 26th of July, 1847, duly presented the said mortgage deed, as well as the note referred to them, together with the certificate of the probate judge that the plaintiff had made affidavit that it had not been paid, to the said administrator, and demanded his acknowledgment, and that the said administrator refused to acknowledge the same; avers that the succession of John J. Yining is indebted to him in the sum aforesaid, with interest from the 1st day of January, 1845, which is secured by the said mortgage; prays that Wade H. Yining, as administrator and heir at law of John J. Yining, and the said Martha Yining be cited to defend and show cause why the said mortgage shall not be foreclosed, and that petitioner have judgment for the foreclosure of the same according to the statute in such cases made and provided, and for such relief as by law he may be entitled.”
The defendants filed a general demurrer, with several exceptions, and then pleaded several pleas to the merits, and among *437-438 others the following, which is deemed the only one that it is material to notice; it is in the words following, i. e.: And for further plea in this behalf, the said defendants say that the said ’Wade H. Yining was duly appointed administrator of the estate of the said John J. Yining, deceased, at the June term, 1844, of the probate court of Bed Biver county, and that the said Wade II. Yining, administrator as aforesaid, caused to be inserted in the Northern Standard, a public newspaper, published in the town of Clarksville, the county seat for the said county of Bed Biver, public notice, notifying all persons of his said appointment as administrator as aforesaid, and also notifying all persons holding claims against the said John J. Yining, deceased, to present them in the time prescribed by law, or else they would be barred, which notice bears date the 5th day of July, A. D. 1844, and was published the time prescribed by law, as will appear by reference to the said publication, here to the court shown; yet these defendants aver that the said claim and mortgage was not presented until long after twelve months had expired from the publication of said notice, to wit: not until the 26th day of July, 1847, whereby these defendants say that the lien created by said mortgage is forever barred and lost, and that the same cannot be enforced against the estate and succession of the said John J. Yining, deceased, and that the claim of the said plaintiff to the said sum of money in his said petition mentioned, is also barred and lost from the same cause, all of which they are ready to verify.”
The court overruled the demurrer, and the cause being submitted to the judge, the parties waiving the intervention of a jury, a judgment was. given for the defendants, from which the plaintiffs appealed. The following statements of facts is sent up to this court, signed by the counsel for the parties, and approved by the judge, i. e.: “In the above cause, after submitting the case to a special judge, without the intervention of a jury, the defendants admitted the execution and recording of the mortgage by John J. Yining in his lifetime, and admitted that Wade H. Yining was appointed [438] administrator, and is now administrator; that Wade H. Yining *439 and Martha Yining are the heirs at law of John J. Yining, deceased; that the said mortgage was presented for acknowlment on the 26th day of July, 1847; admitted that the said mortgage was filed by Amos Morrill, in the office of the clerk of the district court of Ned River county, in a former suit for the foreclosure of the said mortgage, in which said Robert H. Graham was plaintiff, and "Wade H. Yining, administrator as aforesaid, was defendant, and that the said Wade H. Yining was clerk of the said court.
“Plaintiff proved that said administrator had filed an inventory of the estate of John J. Yining, deceased, but had gone no further.
“Plaintiff admitted that Wade H. Yining was appointed administrator, and advertised, and that the mortgage was presented on the 26th day of July, 1847, as set forth in the defendant’s plea.”
.In a former suit between the same plaintiff and the defendant Wade H. Yining, as administrator of John J. Yining, for the recovery of the same money, this court at the last term decided that the suit could not be maintained against the administrator, unless the claim had been presented to him within the time prescribed by our statute, and he had refused to acknowledge it, and that the debt being secured by a mortgage by the intestate, formed no exception. This suit is brought on the same cause of action as appears by the record, and the former judgment was pleaded in bar, but for the purpose of reviewing our opinion in the former case, and as this is different in this particular, that the other was against the administrator only, whereas, in this, the heirs at law are joined with the administrator, we will not pass on the plea of autrefois acquit, pleaded by the defendants in the court below.
Our former opinion rested entirely on the construction of the act of the congress of the republic of 1840, entitled “ an act regulating the duties of probate courts, and the settlement of successions.” In the oath prescribed for the administrator by the 2d section of the act, it will be found that the administrator is required to swear that he will return a true inventory of all said estate, whebh&r real or personal, of *440 the deceased, so far as the same may come to his knowledge and a true account of sales of said administration, as required hy law.
The 4th section requires that the administrator shall give bond in at least double the estimated amount of the estate.
The 11th section requires that appraisers shall be appointed of the estate of the deceased, “who shall return their appraisement on oath, in such time as the court shall appoint, of all the real and personal estate of such deceased as may come to their knowledge.”
We refer to the above provisions of the act of 1840 to show that the administration of all the estate, real and personal, is conferred on the administrator, and that it is different from the common law rule, that the administrator had nothing to do with the realty, his administration being confined to the personalty alone, but with us, he is bound by his oath and by his bond to administer all without distinction, and upon this ground we have ruled that the administrator can sustain an action in his own name for land belonging to his intestate, Thompson v. Duncan, 1 Tex. 485, because his undertaking is to administer all the estate.
The 16th section of the act provides, “ That it shall be the duty of executors and administrators, within two months after granting letters testamentary or letters of administration, to publish in some newspaper printed in the republic, a notice requiring all persons having claims against the estate of their testator or intestate to exhibit the same within the time limited by law, or the same shall be barred; which notice shall state the time of granting such letters testamentary, or letters of administration, and shall continue to be published once a week for six weeks, and the claimants shall have twelve months from the date of letters testamentary, or of administration, to present their demand.”
The construction given to the section just cited by this court, in the case of McDonald v. Hadley and wife, at the last term (see 1 Tex. 490), was, that if the claim was not' presented within the twelve months that it would be completely barred, although there might be assets left of the estate after the pay *441 ■ment of tliose debts that had been presented, that it barred the claim and did not merely postpone it.
By the 17tli section of the act it is provided, “ that no bearer ■of a claim for money against a succession administered by an executor or administrator shall commence an action against such succession before presenting his claim to the executor or administrator.”
The ISth enacts, that if such claim be acknowledged by the executor or administrator, he shall indorse or annex to' the claim a declaration signed by him, stating that he has no objection to the payment of such claim; after which the bearer of such claim shall submit it to the judge, that it may be ranked among the acknowledged debts of the succession. And by the 39th section it is enacted, that if the claim be not acknowledged and approved by the executor or administrator, the owner of the said claim, for the establishment thereof, may bring his action against the executor or administrator before a justice of the peace or the district court of the county where the said succession is opened, and may obtain judgment as in ordinary cases. And by the 20th section it is enacted, “ that the creditor who has obtáined such judgment or the acknowledgment of debt can only obtain the payment of it currently with the other creditors of the succession, unless it be such a privileged claim as ought to be paid without delay.”
By the 21st section it is enacted that the debts due by any testator or intestate shall be paid by his executor or administrator in the order following, to wit: “ Funeral and other expenses of last sickness, charges of probate of will or of letters of administration, judgments, mortgages and executions, the oldest first, then all other debts; and no preference whatever shall be given to creditors in an equal degree where there is a deficiency of assets, except in the case of funeral expenses •and those of the last sickness, and costs of court, judgments, ■executions and mortgages, the oldest of which shall he first paid; or in those cases where a creditor may have a lien on ■any particular part of the estate.”
It will be seen by the extracts we have made from the act !to regulate proceedings in the probate court, that an adminis *442 trator tabes on himself the administration of the whole estate' of the deceased, both real and personal; and it is seen that no-person can bring a suit, against the administrator for any claim for money, without first presenting the claim to the administrator for his approval or rejection; and it is seen that such claim must be presented within twelve months from tEe granting of letters of administration, or that it will be barred. The record before us establishes ■ the fact that the claim sought to' be collected by the plaintiff was not presented to the administrator within twelve months after the grant of letters .of administration. Does the fact of the debt being secured by a= mortgage deed remove it from the operation of the statute?
The plaintiff’s counsel has labored to establish the affirmative of this proposition, and to limit the operation of the probate law in its action on debts to such as are not secured by a> conventional lien, and to show that a mortgagee is left to foreclose his mortgage and enforce the specific lien under the act authorizing the foreclosure of mortgages on real estate. This act was passed on the 14th day of January, 1840, at the same-session that the probate law we have - been examining was passed, the latter, however, passed on the 5th of February. There is, however, no conflict between them; the former provides a mode for enforcing the collection of money secured by a conventional mortgage on real estate. It is by filing, a petition in the office of the clerk of the district court, where such land, or part thereof, is situated. “ stating the case and the amount of the demand, and describing the property mortgaged; whereupon the mortgagor shall be summoned to appear at the next term of said court to show cause why judgment should not be rendered in favor of the mortgagee for such sum with interest and costs as shall be due on such mortgage, which summons shall be served on the defendant in the-manner, and the same proceeding shall thereupon b'e had as in ordinary cases of civil suits, if the defendant be a resident of' the county ; if not, then notice of the pendency of the said suit shall be given by publication made in some public gazette at least four successive weeks before the commencement of the court in which suit is instituted; and if the defendant should. *443 fail to appear at the aforesaid court, or appearing should show no cause why the mortgage should not be foreclosed, then judgment shall be rendered for said mortgagee so petitioning, and execution issue as in other cases; but if there be any dispute about the amount due on any mortgage, if the' mortgagor shall appear within the time prescribed by the rules of pleading, and make affidavit of a just defense, the court shall order a trial of such facts before a jury as in other cases.”
"We have said that this law does not conflict with the requisition of the probate law, “ that all claims for money against the intestate shall be first presented to the administrator;” so far from it, a mortgage is treated as a monied claim by the very terms of the act directing the mode of its foreclosure. It is the expression of the law against what was the common law doctrine, that the fee in the land mortgaged was in the mortgagee, and the mortgagor was compelled to be the actor' in seeking the right of redemption; and it would seem that under this law mortgages would be held in our courts, as they always have been in chancery, as securities, and not as conveying the fee. This statute makes no express provision for a foreclosure against a deceased mortgagor; it is only directory of the mode to be pursued against him personally, before a judgment could be rendered in favor of the mortgagee for the mortgage debt; and there is not a word in it repudiating the idea that the bearer of a mortgage debt against a deceased mortgagor should be exempt from pursuing the remedy in the mode pointed out by the probate law; and that an ample remedy is afforded the mortgagee in such cases, without impairing his security, will be manifest, as we believe, by a reference te the 21st section cited, wherein the claims of debts are classified for payment, mortgages are included. There can be no ambiguity from the fact that judgment is named before mortgage, because it means that the oldest shall take precedence, whether it be the judgment or the mortgage; and if there had been any obscurity in the expression, it would be fully removed by the last clause, enumerating exceptions to the rule, in which is found the following: “ Or in those cases where a creditor may have a lien on any particular <part of the estate.” To give *444 these last words a fair and sensible interpretation, will be to say that in such case the creditor having such lien will be entitled to payment from the proceeds of such particular part of the estate in preference to other creditors. The mortgagor should then present his mortgage debt to the administrator; if allowed, it would be placed on the tableau of debts acknowledged, and in the sale of the estate to be made by the administrator, he would be entitled to payment from the proceeds of the particular part on which he had a lien. By this means he would not have his security diminished, and it would be a mqre convenient mode of obtaining the full benefit of his security at less expense and much sooner. Because it would be the duty of the administrator to ask the order of sale for the purpose of paying the debt. See secs. 29 and 30, Probate Law, 1840.
If a mortgage creditor fails to make such presentation within the time limited by statute, we see no reason why the same consequences should not result as to any other bearer or owner of a claim for money under similar'circumstances.
As the Louisiana probate law is in many respects the original from which ours of 1840 was copied, we may well therefore'look upon the decision of the courts of that state as high authority on the subject. In the case of Lafon’s Executors v. Phillips et al., 2 Martin, N. S. 225, the question was whether the mortgagor lost his lien on the property mortgaged by the sale of such property by the administrator. The late learned Judge Porter in giving the opinion of the court that the lien was lost, and could not follow the property, says: “From the language here used (he refers to the law of the state not materially differing from our own), it results that the privilege and mortgage creditors may demand payment out of the proceeds of the sale, in the hands of the curator, and in preference to simple creditors. This preference could have been given on no other ground than that they would have had the same right on the object from which these proceeds originated; or, in other words, that the money represented and stood in place of it. But if we consider, as is contended, the mortgage still to exist, there is no ground whatever for conferring this advantage on the mortgagee; for the moneys in the hands of *445 the curator would only be the price that the object sold for, after deducting the sum for which it was hypothecated. Such a construction would lead to great injustice, when considered in another point of view. The creditors who may enjoy a lien on the estate of the deceased, we have already seen, can claim payment from the curator out of the proceeds coming from the sale of the property. Now if, in addition to this, they also retain a lien on the object sold in the hands of a purchaser, then it follows that they diminish the general fund, out of which all the debts are to be paid, in a sum exactly equal to the amount of their mortgages; as the buyer will, -of course, not give more than the value of the thing, over and above the sum for which it is hypothecated; that out of this sum 'so diminished, they have a right to be paid in preference to the chirographary creditors, and that the latter have no means of enforcing the lien, which occasions a total loss of their debt.”
We have cited so much of the opinion of Judge Porter, be■cause if such consequences would result under the laws of that state by permitting the lien to remain on the property, the same would be the result with us, as our law is not materially different in relation to the presenting of claims, placing them on the tableau, and marshaling the assets as they are to be applied to the different grades of the debts.
The subject was again before the court of Louisiana in the case of DeEnde v. Moore, reported in the same book, 336, in which the opinion of the court is given by the same judge. He refers to the case of Lafon’s Executors v. Phillips, and states concisely and distinctly the grounds from which the court in that case drew its conclusion, and after an elaborate review of the law on which that opinion was rested, the same doctrine is most satisfactorily sustained. Eor the purpose of illustrating the application of those decisions, we will cite from the opinion of the judge, in his own language, the grounds in law on which the court rested their decision. He refers to the provisions of their code, “ the first was that which declares that it shall be the duty of the judge to sell all the property of the deceased. The second, that which provides *446 that on the proceeds of the sale the court shall settle the order of privileges and mortgages. And the third, that which directs that any creditor, who, after notice given in the manner prescribed, does not come forward and obtain payment out of the fund in the hands of the curator, shall, in the language of the law, he without further recourse or remedy.” Civil Code, 174, art. 128; id. 178, arts. 138, 139.
From these positive declarations of the legislative will we made in the former case the following deductions: “First, that the property which was subject to mortgages must be sold, as well as any other; for if it -were not, all the property would not be disposed of. Second, that this property was sold without being subject in the hands of the purchaser to the mortgage previously existing on it, because the mortgagees had a right conferred on them to take the proceeds in preference to chirograph creditors, a right wholly inconsistent with the idea that these proceeds were only the balance of what the property sold for, above the amount for which it stood hypoth-ecated.. And lastly, that as therp was neither resource nor remedy for the creditor who did not present his claim, to be paid out of the fund in the hands of the curator, that we could not sanction his right to recover the amount due him by a separate action.” We have substantially, as we have before observed, the same provisions in our law from which the learned court of our elder sister state drew the above deductions, and if sound, and we believe they are, the case before us must be governed by them. In this case, however, a distinction is attempted to be made by the appellant’s counsel; it is this, that although the right to sue the administrator may be gone, yet the right to sue the heirs at.law still remains. The common law doctrine of mortgages is relied on to support this distinction, and it may be admitted that at common law the heir would take the land subject to the incumbrance created-by his ancestor. Yet such rules would yield to express legislation. Our probate law, under which this claim has been prosecuted, provides that all claims for money shall be presented to the administrator for acknowledgment, and if not presented within the time prescribed, shall l>e harred. There can be no doubt *447-448 but this is a claim for money, and if there had been any uncertainty whether it was embraced in the terms used in the 16th and 17th sections of the law, this doubt would be removed by a reference to the 21st section. We cannot perceive any soundness in the proposition, that although the action may be barred against the administrator, it w7ould not follow that it was barred against the heir. We believe the limitation in the 16th section was intended to give repose to all persons interested, creditors and heirs. Nor can the fact that the administration is not yet closed change the result, we so decided at the last term in the case of McDougald v. Hadley and wife. The point was there directly presented that the succession had not beep closed when the demand was made. The decision of the court was that the claim, not having been presented within the time prescribed, it was barred. We see no error in the judgment, and it must therefore be affirmed.