Wheeler, J.
As both plaintiff and defendant have appealed from the judgment of the District Court, the more convenient order of treating the objections to the judgment urged by the parties respectively will be to consider, first, those urged by the defendant below, (who is treated as appellee in this record,) which go to defeat, the entire action ; and if these shall be found untenable, secondly, those urged by the plaintiff below, (and appellant,) which go only to the reversal of the present judgment for the purpose of having'it remanded for a new trial with a result more favorable to the plaintiff. It is insisted on behalf of the defendant—
1st. That the court erred in overruling the exceptions to the petition and in holding it sufficient without an averment of the presentment of the note for payment at the house of John A. Merle & Co.
*92 2d. That Andrews, being but the agent and trustee of Goddard for the collection of the note, could not maintain the action upon it in his own name.
3d. That the note itself was void in its inception for usury.
1, 2. The first and second objections here presented may be disposed of by reference to former decisions of this court. In Edwards v. Hasbrook (2 Tex. R., 578) we decided that where a note is payable at a particular place it is not necessary, in an action upon it, for the plaintiff to aver a presentation for payment at that place. And though it was formerly held otherwise in Louisiana, it is understood that by a recent decision such is now held to be the law in that State.
In Thompson v. Cartwright (1 Tex. R., 87) this court decided that the person who appears to be the legal holder of a promissory note may maintain an action upon it in Ids own name, though not the real owner of the note. “The mere naked fact (it was said) of the plaintiff not being the real owner of the note would not be matter of defense either in bar or in abatement.” And see McMillan v. Croft, (2 Tex. R., 397;) Hays v. Cage, (2 Tex. R., 501; 25 Wend. R., 411.)
3. Is the contract tainted with usury? This is the principal question in the case, and in order to its decision it becomes material to determine whether the contract, as to interest, is to be governed by the laws of this country or of Louisiana.
The note, it is to be observed, was made in this country, but was pa.yable at the office of John A. Merle & Co., in the city of New Orleans. And it is insisted on behalf of the plaintiff that the question of the legality of the contract as to the interest is to be determined by the laws of Louisiana. But it is objected by the defendant, 1st, that it is not averred in the petition, and that the court cannot judicially know that the office of John A. Merle & Co., in the city of New Orleans, is in the State of Louisiana, and 2d, that if the note was payable in Louisiana, as it is sought to be enforced in this State, the law of this Stale, and not the law of Louisiana, must govern as to the rate of interest for which it was lawful for the parties to contract.
The first objection here presented is not wholly free from difficulty. In the English courts it is held that the division of Ireland or any other country than England into counties, or the known towns or cities of such country, will not be judicially known by the courts. (1 Chit. Pl., 250.) In the case of Kearney v. King (18 Eng. Com. L. R., 28) it was hold that if a declaration upon a bill of exchange state that a bill was drawn at Dublin for a certain sum of money,, without averring that Dublin was in Ireland, or that t.he bill was given for Irish currency, it must be taken to mean that the bill was drawn for English money. Abbot, Ch. J., said : “The framer of the declaration has not said that Dublin is in Ireland, and we cannot assume it, whatever may be our belief upon the subject.” And Bailey, J., said : “Unless we are informed that Dublin is in Ireland we cannot give the legal operation of the declaration which is contended for, because there may be a Dublin in America or Scotland.” If the judges of an English .court sitting in Westminster Hall cannot judicially know that Dublin is in Ireland, it may well be questioned whether this court; can judicially take notice of the fact that New Orleans is in Louisiana.
But it is said that there are various public acts of the Congress of the Republic of Texas which speak of Now Orleans, and that these acts furnish judicial information of the local situation of that city. But this is no answer to the objection ; for although we may know, as a matter of history or of geography, 1 hat there is a New Orleans in Louisiana, yet we cannot know that it is the New Orleans in which is the office of John A. Merle & Co., where this note is payable. There may also be a New Orleans in Oregon or California. We cannot suppose that the courts in England might not know, for some purposes, that there is a Dublin in Ireland; but they hold that they could not judicially take notice that a bill drawn at Dublin was drawn at Dublin in Ireland. for the purpose of its construction in reference to the currency ill which it was payable.
*93 In Missouri it has been decided that the courts of that State cannot judicially know that New Orleans is in Louisiana. (6 M. R., 568; and see Porter (Ala.) R., 239; 42 Com. L. R., 913; 6 Id., 413.)
If, then, the question of fact must be determined by our judicial knowledge, we should perhaps be constrained to hold that we cannot judicially know that this note was payable in the State of Louisiana. And if we can derive a knowledge of the fact from any source it must be from the allegations of the parties or the evidence contained in the record.
The petition contains no averment of the fact, but the answer alleges that “the said John A. Merle, of New Orleans, in the State of Louisiana, in the District Court of the United States for the district of Louisiana, filed his petition,” &c. This, it is true, is not a direct admission of the fact that the office of John A. Merle & Co., in New Orleans, is in the State of Louisiana; but taken in connection with the fact that the plaintiff was permitted to prove the law of Louisiana without objection, that the court instructed the jury in reference to the law of that State, and that the parties appear to have conducted the trial below upon tire assumption that the note was there payable, it is deemed sufficient to authorize us to adopt that conclusion.
But it is further objected that though the note was payable in Louisiana, yet as it was both made and sought to be enforced in this State, the laws of this State must govern in determining upon its construction and validity. It is believed to be the well-settled rule that interest is to be computed according to the law of the place where the contract is to be performed, where that is a place other than that of the lex loci contractus. (Story on Confl. of Laws, sec. 291, n. 2; Id., sec. 296.)
“The authorities (says Chancellor Kent) are numerous to show the general rule to be that interest is to be paid according to the place where the contract is made, unless the payment was to be made elsewhere, and then it is to be according to the law of the place where the contract was to be performed.” (2 Kent Comm., 460, n. c; 2 Wash. C. C. R., 253; 4 Id., 296; 4 Pet. R., 111; 17 Johns. R., 511; 20 Id., 102.) He also says that “according to the case of Thompson v. Powles, (2 Sim. R., 194.) it is now the received doctrine in Westminster Hall that the rate of interest on loans was to be governed by the law of the place where the money was to be used or paid or to which the loan had reference, and that a contract made at London to pay in America at a rate exceeding the lawful interest in England was not a usurious contract, for the stipulated interest was parcel of the contract. This (he adds) is also the law of this country, and it appears to be a liberal relaxation of the former rule.” The principle here stated is strictly applicable to the present case, admitting that the rate of interest contracted for was greater than that which was then allowed by our law; and the case cited in the text, of Thompson v. Powles, from the brief statement of its principles, appears to be precisely in point. That was upon a note both made and enforced in England to pay in America at a stipulated rate of interest exceeding the lawful rate in England, and the court held that the contract was not usurious. The fact that the contract was enforced in England does not appear to have been considered a circumstance affecting the question.
In the case of Andrews v. Pond (13 Pet. R., 65) the Supreme Court of the United States asserted and maintained the same doctrine. The note was made in New York, where the interest was seven per cent., and was payable in Alabama, where it was eight per cent. By the laws of New York, if more than the legal interest of that State was reserved, the contract was wholly and absolutely void. The court said: “ The general principle in relation to contracts made in-one place to be executed in another is well settled. They are to be governed by the law of the place of performance, and if the in *94 terest allowed by the law of tlie place of performance Is higher than that permitted at the place of contract, the parties may stipulate for the higher interest without incurring- the penalties of usury. In the case before us, if the defendants had given their note to II. M. Andrews & Co. for the debt then due to (.hem, payable at Mobile in sixty days, with eight per cent, interest, such a contract would undoubtedly have been valid, and would have been no violation of the laws of Mew York, although the lawful interest in that State is only seven per cent. And if in the account, adjusted at the time this bill of exchange was given, it had appeared that Alabama interest of eight per cent, was taken for the forbearance of sixty days given in the contract, and the transaction was in other respects free from usury, such a reservation of interest would have been valid and obligatory upon the defendants, and would have been no violation of the laws of Mew York.” (Id. 77, 78.) The court appear to have attached no consequence to the fact that the action was brought in the State of Alabama, nor has the searching examination of the learned counsel, who has argued this case on the part of the defendant with so much ability, enabled him to refer us to any ease in which the place where the contract is sought to be enforced has been held to operate an exception or qualification to the rule. It. is not perceived that it can make any difference in what forum the action is brought and the contract sought to be enforced. Unquestionably the validity of the contract, wherever contested, must be determined by the law of the place where the contract was made. If valid there, it is valid everywhere ; hut if void by tlie lex loci contractus, it will carry with it no obligatory force elsewhere, and cannot be enforced in the courts of any other country. But the question here is not whether a contract., void by the law of the country where it was made, can he enforced elsewhere, but whether this contract was void by law of this country, where it was executed. And the authorities cited clearly show that it was not; that being payable in another country, the parties will be deemed to have contracted in reference, to the laws of that country in which tlie contract was to be. performed, and to have had those laws in view in making their contract, and that it was lawful here thus to contract in reference to the laws of another country. Tlie contract being lawful here, will be held to be valid and obligatory everywhere and in whatever forum its validity may be drawn in question.
But it is said that if it be permitted to parties to contract for a greater rate of interest than is allowed by our "law, by simply naming a place of performance where the laws do not forbid such greater rate of interest, it will always be in their power to evade the laws of this State against usury. It would be difficult to stare a case in which such attempted evasion of our laws would not be sufficiently manifest to enable a jury to ascertain the real intention of the parties. And although the contract on its face should appear to be free from the taint of usury by being payable where the interest reserved was not forbidden by law, yet, if it was so made and intended as a cover for usurious interest, the form in which it was executed and the aspect in which it was framed would afford it no protection from the consequences of usurious agreements; “and if the fact be established, it must be dealt with in the same manner as if the usury was .expressly contracted for in the instrument itself.” But whether it was so expressed and framed as a cover for usury or not, where it does not so appear on the face of the contract, is a question exclusively for the decision of the jury. Id is a question of intention. (Id., 70; 4 Hill R., 224.> If, indeed, the parties did reserve a higher rate of interest than that allowed by tlie law of tlie place where the note was made or payable, under tlie mistaken belief that the law would not in that shape regard it as usurious, their mistake in that respect would not alter the character of the transaction. (Id., 79, 80; 9 Mass. R., 49; 2 Cow., 712.) But where the contract upon its face appears to be legal, it is for the jury to decide whether usurious interest was in fact reserved in the contract, and concealed under the form or pretense of a contract to be performed in another country, or under any other *95 form or name; and if it shall be so found by the jury, the question is, what law governs the construction and execution of the contract? Unquestionably it must be the law of the place where the contract was made and the instrument executed. “A contract of this kind cannot stand on the same principles with a bona fide agreement made in one place to be executed in another. In the last-mentioned case the agreements were permitted by the lex loci contractus, and will even be enforced there if the party is found within its jurisdiction. But the same rule cannot be applied to contracts forbidden by its laws and designed to evade them. In such cases the legal consequences of such agreement must be decided by the law of the place where the contract was made. If void there, it is void everywhere.” (Oh. J. Taney, in Andrews v. Pond.)If therefore parties should endeavor thus to contravene and evade the laws upon this subject, there is, it is conceived, no reason to apprehend that the vigilance and acumen of juries to whom the question of intent may be submitted will not be able to discover the real intention of the parties, to unmask, and defeat such covert agreements, and to avert the consequences so strongly and justly deprecated. But it cannot, it is conceived, with reason be maintained that it ever entered into the conception of the parties making this contract thus to frame it with a view of evading the laws of this country upon the subject of usury.
The contract in this case on its face shows that it was to be performed at a. place other than at which it was made. The parties entered into it with a view to its performance in the State of Louisiana. They must be supposed to have contracted in reference to the laws of that State ; and those laws must govern in the inquiry as to whether the rate of interest stipulated in the contract is greater than that allowed by law.
It has also been held in Louisiana, and is considered by Chancellor Kent as the principle established in New York, that if the rate of interest be stipulated in the contract, and it be according to the law of the place where the contract was made, though that rate be higher than is lawful by the law of the place where payment was to be made, the specified rate of interest at the place of the contract may be recovered in the courts of that place. (2- Kent Comm., 460, n. a. c.) So that in the present case it would seem, according to-the decisions of those courts, that though the stipulated interest be greater than that allowed by the law-of Louisiana, yet, if not also greater than that allowed by law here, it may be recovered” in this action. But it will not become material to examine the case in reference to this doctrine unless it shall first have been ascertained that the interest here stipulated to be paid is greater than it was at the time allowed by the laws of Louisiana.
The material inquiry, then, is, was the interest reserved in this contract greater than that allowed by the laws of Louisiana? and was it competent for the defendant to introduce evidence to impeach the consideration on (hat ground? In considering these questions we may consider the grounds urged for a reversal of the judgment on behalf of the plaintiff. These are, 1st, that the court erred in admitting evidence to impeach the consideration of the note for usury in the hands of the indorsee; 2d, that the court erred in the instructions to the jury respecting the law of interest of Louisiana.
1. It was proved that the property in the note is in the first indorsee, Goddard, and that it was indorsed and transferred to him before maturity; and it does not appear that he had notice of the consideration of the note. We do not think, as has been insisted on behalf of the defendant, that there is anything upon the face of the note calculated to put the indorsee upon inquiry respecting its consideration, and thereby to affect him with constructive notice. That a promissory note bears interest from a time anterior to its date, does not make it on its face usurious, (4 Pick. R., 173; 1 McC. R., 143;) nor does it. cast suspicion on the legality of the consideration. We cannot regard the indorsee, who appears to be the present owner of the'note, otherwise than *96 as an innocent indorsee for a valuable consideration; and the question is, can the consideration be impeached in his hands for usury? Under the English statutes against nsnrv, (which, according to Kent, have been adopted throughout the United States,) it is held that if given for a usurious consideration, the note is void in the hands of an innocent indorsee for a valuable consideration (Kent Comm., 79, 80) unless the statute itself protects bills and notes in the hands of the innocent indorsee; as do the statute of fifty-eight; George III, c. 98, and the Revised Statutes of New York, (Ib., n. c.) The rule that the hill or note is void in the hands of an innocent indorsee, is, it has been said, the result of a positive rule and provision of the statute of usury that a contract to secure the payment of usury is not voidable only, but absolutely and from the beginning void, and therefore to be treated as if it never had existence. (10 Mass. R., 123.) The same rule, says Kent, would of course apply to every case in which the contract is by statute declared absolutely void. (3 Kent Comm., 80.)
We have not found this question expressly decided upon the laws of Spain, but those laws, in their denunciation of usurious contracts as being absolutely void, appear to he as positive and peremptory as the English and American statutes; and these denunciations are also by statutes and" regulations having the force and effect of positive enactments. The reason given for the existence of this rule in the English, would seem to apply with equal force in the application of the Spanish law.
In the case of Herman v. Sprigg, (3 Martin, N. S., 190,) a case which appears to have been decided with great consideration, the Supreme Court of Louisiana held that contracts in which usury intervenes are void by the laws of Spain. In pronouncing the opinion of the court, Judge. Porter says : “It most clearly appears, by a reference to the various laws of Spain in relation to usury, that contracts in which it took place were considered as null and of no effect. Such also is the opinion of the most esteemed commentators on these laws that we have been able to consult. To cite in support of this conclusion the various statutory provisions by which, from time to time, the several monarch of Spain endeavored to prohibit the loan of money at illegal interest, is unnecessary ; we deem it sufficient to refer to a provision contained in one of the last edicts on this subject. We allude to that of Phillip III, promulgated in 1608, in which, after prescribing the penalties the borrower and lender are liable to who enter into usurious contracts, it declares that every contract or agreement which shall he made against the foregoing shall be null and of no value, and that henceforward no one shall avail himself of or profit by such contract sunder the penalties already mentioned.” (Id., 194, 195.) This prohibition would seem, in its terms, sufficiently comprehensive to embrace the case of an innocent indorsee. The judge also quotes from Febrero (p. 1, ch. IV, s. 2, n. 37) that “Che contracts in which usury is practiced are null.” &e.,and other Spanish authorities to the same effect. To what extent the contract was null, whether for principal and interest or for interest only, was much discussed by the court, hut it is not material to be here considered. This also was the action by an indorser; but in the report of the case it is not stated whether the note was indorsed before or after due. The former, however, would perhaps he the presumption. From the authorities cited, and others to which we have had reference, we sec no reason to conclude that usury does not affect the ■contract in the hands of the indorsee equally in the Spanish as in the English law. We conclude therefore that it was competent for the defendant to impeach the consideration of the note in this case for usury, and that the •court did not err in admitting evidence for that purpose.
2. Did the court err in the instructions to the jury respecting the law of interest of Louisiana?
It was in proof that the law of that State, as it stood when this contract was made, allowed parties to contract for interest at the rate of ten per cent.; and interest in Louisiana, as well as elsewhere, is governed by the law in force at *97 the time of contracting, and cannot be varied by any subsequent change in the law. (12 La. R., 530.) This contract, therefore, was not upon its face usurious.
But it was proved that upon the several items of the account for which the note was given interest was charged at the rate of ten per cent.; that this was .added to the principal, and that the note was given for the aggregate amount. And upon this evidence the court instructed the jury that “if interest was computed on the accounts previous to giving the notes, and if, upon the notes, interest at ten per cent, was required, both taken together, being higher than allowed by law where the. note was payable, would be usurious.”
This instruction was not, it is conceived, correct. In the case of Millandon v. Sylvester et al., (8 La. R., 267,) the Supreme Court of Louisiana held that when an account current has been rendered to a party, and received and entered on his book swithout objection, he cannot afterwards object to it on tho ground that it contains charges for compound interest. If the party gave his assent to the charge, it is recoverable. And in a recent case (Ledoux & Co. v. Gaza, decided March, 1849,) the same court held that where a balance is struck and an account rendered by a factor to his principal, and is acquiesced in, there is nothing illegal in charging, subsequently, interest on such balance, of which anterior interest formed a component part. Nothing more than what these decisions sanction appears to have been done in the present case; and the testimony shows that the defendant was advised by his attorney of the manner in which the account was rendered, yet he executed his note, and thus gave his assent to the charges of interest as computed in the account.
In the case of Millandon v. Arnard, (4 La. R., 542,) the Supremo Court of Louisiana papear to have gone even further than in the cases just cited, and to have held that where the plaintiff had furnished to the defendant an account current between them up to a certain time, and struck a balance showing the amount claimed to be then due, which the defendant received without objection, he could not afterwards, when sued for the balance claimed to be due, be permitted to show, by the production of the account, overcharges, errors in calculating interest., and usurious and illegal charges. His acceptance of the account was held to be evidence of a settlement and acknowledged balance due at that time. And although there might have been items of usurious interest charged in the account, yet after such settlement and balance struck, .and acknowledged to be due, it was like the case of a promise performed to pay usurious interest, which, when paid, cannot be recovered back. (Id., 544, 545 ; 2 La. R., 429.)
That an agreement to pay interest on interest is not usurious, is well settled. Thus, where Agave to B his promissory note dated January 1, 1829, payable in two years, with annual interest, no payment having been made until February, 1832, it was agreed between the parties that compound interest should be computed on the note up to the 1st of January, 1832, and added to the principal, and a new note given for the amount, payable in two years, with interest annually, which was accordingly done. In an action upon the note it was held that it was not usurious. (Camp v. Bates, 11 Conn. R., 487; Const. Rep., 501; Turner v. Miller, 1 Eng. (Ark.) R., 463, 468; 1 Hawks. R., 476; 23 Pick. R., 167.)
The transaction, as presented by the evidence in this case, does not appear do have been usurious, and the court erred in instructing the jury, in effect, that it was so. It is true that the witness Crosby stated that both compound and usurious interest were computed in the account, but it is manifest that this was but the opinion of the witness upon a question of law, and it is scarcely necessary to say that such statements by a witness are not to be received, and are not evidence. It is only as to matters of fact that the statements of a witness are evidence. In the view we have taken it does not become necessary to inquire whether the interest stipulated in the contract was greater than that «Bowed by the laws of this country.
It is manifest that the instruction given by the court to the jury, which we tiave considered, influenced their finding, and produced a result which does *98 not appear to have been warranted by the evidence and the law applicable to the case. The ¡judgment must therefore be reversed and the cause remanded-for further proceedings.
Note 27. — Hubbell u Lord, 9 T., 472.
Note 28. — Martel v. Hernsheim, post, 205; Thomas v. Young, pos£, 253; Knighfc v. Holloman, 6T., 153; Butler v. Robertson, 11 T., 142; Claiborne v. Yoeman, 15 T. 44; Wimbish v, Holfc, 26 T., 673; ¡Rider v. Duval, 28 T.. 622; Moss v. Witcher, 35 T., 388.
Note 29. — Ellis v. Park, 8 T., 205; Yale v. Ward, 30 T., 17.
Note 30. — Hill v. George, ante, 87.
Note 31. — Able v. MeMurray, 10 T., 350. When recourse is had upon the drawee of a bill of exchange, interest and damages are recoverable according to the law of the place where the bill was drawn; and in like manner, when recourse is had upon the indorser of a bill of exchange, interest is recoverable according to the law of the place where the indorsement wa& made. (Bailey v. Hoald, 17 T., 102.
Note 32. — Rutherford v. Smith, 28 T., 322.
Note 33. — Lewis v. Paschal, 37 T., 315.
Judgment reversed.