**CESSNA FINANCE CORP., Appellant,**

v.

**Lucian L. MORRISON, Appellee.**

**No. 01–83–0204–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 19, 1984.

Rehearing Denied Feb. 16, 1984.

Thomas Coleman, Jr., Steven L. Weathered, John A. Cavin, Ross, Banks, May, Cron & Cavin, Houston, for appellant.

Joseph A. Horrigan, Armogida & Coats, Houston, for appellee.

Before EVANS, C.J., and BASS and COHEN, JJ.

## OPINION

EVANS, Chief Justice.

This is an appeal from a summary judgment entered in favor of Lucian L. Morrison, administrator of the estate of Frank Dyke, deceased, against Cessna Finance Corp., a secured creditor of the decedent's estate.

Cessna's first five points of error relate to the trial court's action in classifying its claim as "a preferred debt and lien" payable only from the proceeds of the security, under sec. 306(a)(2) of the Texas Probate Code, rather than as a "matured secured" claim which would be paid in due course of the administration of the estate pursuant to sec. 306(a)(1) of the Probate Code.

The transaction giving rise to Cessna's claim against the decedent's estate involved the purchase of an airplane. The summary judgment proof shows that in March, 1980, the decedent executed a promissory note and conditional sales contract with Cessna which provided for a deferred payment of $360,745.80, in eighty-four monthly installments of $4,187.45 each, commencing April 4, 1980. In the sales transaction, the seller reserved a security interest which was assigned, along with the contract and note, to

Cessna. On December 6, 1980, the decedent died in Bolivia, apparently as a result of the crash of the airplane. On March 16, 1981, Cessna filed its claim with the administrator of the decedent's estate for the sum of $213,888.55, representing the claimed balance due in the secured debt. On April 15, 1981, the administrator filed its written objections to the claim, pointing out that the claim failed to specify whether the claimant desired to have the claim allowed and approved as a matured secured claim under sec. 306(a)(1), to be paid in due course of administration, or whether it desired to have the claim allowed, approved and fixed, under sec. 306(a)(2), as a preferred debt and lien against the specific property securing the debt. The administrator rejected the claim in its entirety. Cessna instituted this action to recover the amount of its claim and then filed a motion for summary judgment asserting that it was entitled, as a matter of law, to judgment under the terms of the note. In response, the administrator urged that because Cessna had failed to specify an election under sec. 306(a), its claim should be treated as a preferred debt and lien claim against the specific property. After a hearing, the probate court entered summary judgment in Cessna's favor for the full amount of its claim, but directed that Cessna's claim be classified as a preferred debt and lien claim which, under sec. 306(c), was limited to the aircraft comprising the security for the debt. The administrator thereafter moved for summary judgment against Cessna, asserting a counterclaim for usury, and upon hearing that matter, the trial court granted summary judgment in favor of the administrator against Cessna for the sum of $98,276.64, as penalties, plus $12,000 in attorney's fees. Cessna appeals from those portions of the final judgment entered against it.

Texas Probate Code sec. 298(a) requires that claims for money against a decedent's estate be presented to the personal representative of the estate within six months after the original grant of letters and that the payment of any claims not presented within such period will be postponed until claims which have been so presented and allowed by the representative, and approved by the court, have been first entirely paid. The Code further provides that the failure of the holder of a secured claim to present his claim within the said six months period shall not cause his claim to be postponed, but that such claim shall be treated as a claim "to be paid in accordance with subsequent provisions of this Code." Tex.Prob.Code Ann. sec. 298(a) (Vernon 1980).

Sec. 306 deals with the method of handling secured claims, and we quote that section in its entirety:

(a) *Specifications of Claim.* When a secured claim against an estate is presented, the claimant shall specify therein, in addition to all other matters required to be specified in claims:

(1) Whether it is desired to have the claim allowed and approved as a matured secured claim to be paid in due course of administration, in which event it shall be so paid if allowed and approved; or

(2) Whether it is desired to have the claim allowed, approved, and fixed as a preferred debt and lien against the specific property securing the indebtedness and paid according to the terms of the contract which secured the lien, in which event it shall be so allowed and approved if it is a valid lien; provided, however, that the personal representative may pay said claim prior to maturity if it is for the best interest of the estate to do so.

(b) *Handling of Secured Claims Not Presented in Time.* If a secured claim is not presented within the time provided by law, it shall be treated as a claim to be paid in accordance with Paragraph (2) of Subsection (a) hereof.

(c) *Approved Claim As Preferred Lien Against Property.* When an indebtedness has been allowed and approved under Paragraph (2) of Subsection (a) hereof, no further claim shall be made against other assets of the estate by reason thereof, but the same thereafter shall remain a preferred lien against the property securing same, and the

property shall remain security for the debt in any distribution or sale thereof prior to final maturity and payment of the debt.

(d) *Payment of Maturities on Secured Claims.* If property securing a claim allowed, approved, and fixed under Paragraph (2) of Subsection (a) hereof is not sold or distributed within twelve months from the date letters testamentary or of administration or guardianship are granted, the representative of the estate shall promptly pay all maturities which have accrued on the debt according to the terms thereof, and shall perform all the terms of any contract securing same. If the representative defaults in such payment or performance, on motion of the claimholder, the court shall require the sale of said property subject to the unmatured part of such debt and apply the proceeds of the sale to the liquidation of the maturities, or, at the option of the claimholder, a motion may be made in a like manner to require the sale of said property free of such lien and to apply the proceeds to the payment of the whole debt.

Cessna contends that because its claim was presented within the six months period provided by sec. 298(a), that the court exceeded its powers in classifying the claim as a preferred debt and lien against the security, and it argues that because its claim states "on information and belief" that the collateral was "lost or destroyed," the claim adequately reflected its election to have the claim allowed as a matured secured claim for money payable out of the general assets of the estate.

In response to Cessna's contentions, the administrator argues that the provisions of sec. 306(a) are mandatory, and that a secured claim is not timely "presented" within the meaning of 306(a) unless the claimant specifies in the claim, "in addition to all other matters required to be specified," the claimant's election either to have the claim allowed and approved as a "matured secured claim" or as a "preferred debt and lien" against the specific property securing

the debt. Thus, the administrator argues that the secured creditor must make an affirmative election within the six months period following the original grant of letters. Otherwise the claim is to be treated as a preferred debt and lien against the specific security, as provided by sec. 306(b).

■ Although we find no cases construing sec. 306(a) and (b) together, we are persuaded that the construction urged by the administrator is correct. Accordingly, we conclude that because Cessna did not make an affirmative election, as required by sec. 306(a), its secured claim was not timely "presented" within the meaning of sec. 306(b), and when it failed to amend its claim in response to the administrator's objections, the probate court was authorized to treat its claim as a preferred debt and lien against the specific property, as provided by sec. 306(b).

■ We also have determined that Cessna's secured claim in the case at bar does not affirmatively reflect an election to proceed under sec. 306(a). Although the claim recites that it is secured by the conditional sales contract establishing a lien on the aircraft belonging to the estate, and alleges on information and belief that the aircraft has been lost or destroyed, the claim fails to request or otherwise indicate an election for treatment other than as a preferred debt and lien against the specific property. The administrator timely filed its objections to the claim, as required by Tex.Prob.Code Ann., sec. 302, specifically pointing out this failure, but Cessna made no effort thereafter to amend or supplement the claim to indicate the required election. Although the claimant asserted in its brief that it did not receive notice of the administrator's objection, it concedes on oral submission that specific notice of such filing was not required and that it was legally on notice thereof. *See, Russell v. Dobbs,* 163 Tex. 282, 354 S.W.2d 373, 376 (1962).

Cessna argues, notwithstanding the provisions of sec. 306(b), that even assuming it failed to make an election as required by sec. 306(a), its claim should be treated as a matured secured claim to be paid in due

course of administration rather than as a preferred debt against the specific property. In support of this argument it cites *Dallas Joint-Stock Land Bank v. Maxey*, 112 S.W.2d 305 (Tex.Civ.App.—Dallas 1937, no writ). In that case a mortgagee made no election under the statute (now codified under sec. 306), and its claim was classified by the probate court as a class 3 claim. The mortgagee contended that because unpaid allowances existed in favor of the widow and minor children of the decedent, which have priority over costs of administration, the personal representative of the estate could not properly charge general administration expenses against the security for the debt. The Dallas Court of Civil Appeals overruled this contention, concluding that since the claimant had not made an election in accordance with the statute, it was not entitled to the protection of the statute (now sec. 306), and held that the administration expenses, bearing a priority classification, could be paid out of the proceeds of the mortgaged property.

Cessna contends that the holding in *Maxey* suggests that when a secured claimant makes no election under sec. 306, the claim should be considered a matured secured claim to be paid in the due course of administration, rather than as a preferred debt against the specific property. We do not read the decision in *Maxey* as compelling that conclusion. We further conclude that even if *Maxey* does stand for the proposition urged by Cessna, the decision does not apply to the facts of the instant case. In *Maxey*, the secured property was sold by the administrator to the mortgagee for the amount of the secured claim plus interest. The dispute between the claimant and the administrator was over whether the administrator's fees and the attorney's fees in connection with the sale could properly be charged against the funds derived from such sale. The court held that such fees and costs were proper charges against the sales proceeds, and that since the claimant had not made the statutory election, it was not entitled to claim the protection afforded claimants who do make the election. Under the facts involved in *Maxey*, it was

unnecessary for the court to determine whether a secured claimant's failure to make a sec. 306(a) election, within the time for presentment of claims, entitles the probate court to treat the claim as a preferred debt and lien against specific property in accordance with sec. 306(b). Indeed, the court in *Maxey* did not even make reference to the provisions of sec. 306(b).

■ The record in the case at bar shows that Cessna was given the opportunity to amend its defective claim, and that within the six month period, it could have presented to the administrator a corrected claim in compliance with the statute. However, Cessna did not heed the administrator's objection and took no action to correct its defective claim. Under such circumstances, the probate court acted within its discretion in finding that Cessna had failed to make the election required by sec. 306(a), and in classifying Cessna's claim as a preferred debt and lien against the security under sec. 306(a)(2), Texas Probate Code. We overrule Cessna's first four points of error.

■ We also overrule Cessna's fifth point of error in which it argues that secs. 306(a)(2) and 306(c) of the Texas Probate Code unconstitutionally impair the obligations of its contract with the decedent. The constitutional prohibitions relied upon by Cessna apply only where parties have entered into a contract and thereafter a statute is passed that unlawfully impairs their contractual obligations. *See, City of Brownsville v. Public Utility Commission of Texas*, 616 S.W.2d 402 (Tex.Civ.App.— Texarkana 1981, writ ref'd n.r.e.). That is not the case here.

In its points of error six through ten, Cessna contends that the trial court erred in applying the law of Kansas in determining whether the transaction in question is usurious, and that regardless of whether Kansas or Texas law is applicable, the transaction was, under the law of both states, not usurious because it was a time-price sale.

The summary judgment proof shows that three states were involved in the decedent's purchase of the airplane. The conditional sales contract and promissory note were both entered into in Minnesota, the home state of the seller; the buyer was from Texas, and the contract provided that the airplane's home base would be in Houston; and the promissory note provided for payment of the purchase price to Cessna at its offices in Kansas. Neither document specified which state laws were intended to govern the transaction.

The estate's counterclaim for usury is based upon the note and its provision for a fifteen percent interest rate. Both sides concede that under Texas law the time-price doctrine would apply and that the transaction would not be usurious. However, the trial court found that Kansas law governed, and therefore that the contractual rate of interest violated the usury statute of that State.

We have concluded that the trial court properly applied the law of Kansas to the transaction; however, we also have determined that the contractual rate of interest was not usurious under the law of that state.

Cessna contends that Kansas law should not be applied because the contract did not contain a "valid forum selection clause," and that the law of the state with the most significant relationship should be applied to resolve the conflicts issue. *See, Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414 (Tex. 1983).

■ We recognize that *Duncan* now sets forth the controlling law for resolution of the conflict issue in contract cases. However, we do not believe the Texas Supreme Court intended to extend this principle to negotiable instruments. In the case at bar, the promissory note expressly provided for payment in Kansas, and the laws of that State therefore govern the substantive rights and liabilities of the parties. *Andrews v. Hoxie*, 5 Tex. 171 (1849); *Wade v. Darring*, 511 S.W.2d 320 (Tex.Civ.App.—Houston [14th Dist.] 1974, no writ); Re-

statement of Conflict of Laws 2d, sec. 214, comment (b).

■ We also hold that the transaction is not usurious under Kansas law. Both parties agree that the transaction was a purchase on credit which would be governed by the time-price doctrine, but they disagree about whether that doctrine is recognized in Kansas. Cessna contends that Kansas, like Texas, recognizes the time-price doctrine and that the transaction should, under that doctrine, be exempt from the Kansas usury statute. In support of its position, Cessna cites *Atlas Securities Co. v. Copeland*, 124 Kan. 393, 260 P. 659 (1927). The administrator concedes that because of the *Atlas* decision, a time-price sale was not subject to Kansas usury laws when that decision was rendered. However, the administrator argues that because of statutory changes in Kansas subsequent to the *Atlas* decision, the time-price doctrine should no longer be considered "alive" in that State. The administrator refers us to the statutory analysis of Prof. Barkley Clark, "Interest Rates in Kansas: The Decline and Fall of Ezekiel," 49 Journal of the Kansas Bar Association 81 (1980).

■ We do not consider it necessary to discuss whether the time-price doctrine in Kansas has been eliminated by implication by statutes enacted subsequent to the *Atlas* decision. It suffices to say that we have not been referred to any Kansas statute or case which expressly rejects the time-price doctrine as an exception to the Kansas usury rule. We also point out that despite Professor Clark's article, at least one student of Kansas usury law has concluded that the time-price exception to Kansas usury law still exists. *See*, Note, "New Kansas Usury Laws and Interest Rate Regulation," 20 Washburn L.J. 572, 580 (1981). Thus, we are required to recognize the decision of the Kansas Supreme Court in *Atlas* as representing the law of that state, and we accordingly sustain Cessna's eighth point of error. We also conclude that the trial court was entitled to judicially notice the law of Kansas, and we therefore

overrule Cessna's ninth point of error. Because of our decision that the transaction in question was not usurious under Kansas· law, we need not address Cessna's tenth point of error contending that the Kansas usury statute is unenforceable in Texas; Cessna's eleventh point of error contending that the defense of usury was personal to the decedent and that the administrator had no standing to raise the defense; and Cessna's twelfth point of error asserting that any award for usury should be in the form of a setoff, and was not the proper subject of an independent judgment.

We affirm that portion of the trial court's summary judgment awarding to Cessna the full amount of its claim, and directing that such claim be classified as a preferred debt and lien claim against the specific property given as security for the debt on which the claim is based, and we reverse that portion of the trial court's summary judgment awarding damages against Cessna on the administrator's counterclaim for usury, and render judgment that the administrator take nothing against Cessna on said counterclaim.

All costs of appeal are divided equally between the parties.

BASS, J., dissenting.

BASS, Justice, dissenting.

The proposed disposition of this appeal disturbs me because I feel the law should facilitate commercial transactions and the administration of estates, rather than create obstacles which frustrate reasonable business expectations. The administrator's duty is to marshall the assets of the estate and use them to pay off debts of the estate, not to evade payment of these debts through a procedurally rigid interpretation of the Probate Code.

The majority opinion disposes of the appeal by construing sec. 306(b) first, to provide that a secured claim has not been "presented" unless and until the sec. 306(a) election is explicitly made; and second, to require that presentment of a secured claim must be made within six months or the creditor's right of election is waived. I disagree with both holdings.

## 1. When is a Claim "Presented"?

The majority holds that if the probate court finds that a secured claimant failed to make a sec. 306(a) election, this finding nullifies the creditor's attempt to present a claim. That is, the majority takes the position that a claim is not "presented" until the election is made to the probate court's satisfaction. The probate court will rarely determine, within six months of the granting of letters, whether the election was properly made. Therefore the majority's decision means that a creditor cannot exercise his right to a judicial determination without risking his right to a sec. 306(a)(1) matured secured claim against the estate. If the court finds that he made no election, his presentment is deemed void and he has run out of time to present his claim and make an election to the satisfaction of the court (assuming the "time provided by law" of sec. 306(b) means six months from issuance of letters).

I believe a claim should be deemed presented for purposes of sec. 306(b) at the time it is filed with the estate. Sec. 306(a) clearly says that when a secured claim is presented the claimant shall make his. election. However, under the guidelines of *Chisholm v. Bewley Mills*, 155 Tex. 400, 287 S.W.2d 943 (1956), the requirement that the claimant "shall specify" should be viewed as directory, not mandatory, and therefore a failure to specify should render the claim defective, but not void. In *Chisholm*, the petitioner asked that a claim be treated as invalid because of the claimant's failure to comply with art. 3523 (now Probate Code sec. 313), which said the claim "shall be filed" within 30 days of judgment. The court pointed out that while the word "shall" is often mandatory, "it may be and frequently is held to be merely directory." *Id.* 287 S.W.2d at 945. As a guide to interpretation, the court stated:

> Provisions which are not the essence of the thing to be done, but which are included for the purpose of promoting the the proper, orderly and prompt conduct

of business, are not generally regarded as mandatory.

The requirement of 306(a) that claimant specify how its claim be treated is just such an administrative ease type provision. The "essence of the thing to be done" under part 4 of ch. 8 of the Probate Code is to administer the estate in an orderly manner to pay off debts of the decedent. The sec. 306(a) election is a provision which promotes the orderly conduct of the business of administration.

The court goes on to say,

If the statute directs, authorizes or commands an act to be done within a certain time, the absence of words restraining the doing thereof afterwards or stating the consequences of failure to act within the time specified, may be considered as a circumstance tending to support a directory construction.

*Chisholm,* 287 S.W.2d 943, 945. The Code does not prohibit making an election after the claim is presented, nor does it specify the consequences of failing to make a 306(a) election.

Therefore, even though the failure to elect makes the claim defective, the claim should be deemed presented at the time it is filed. The claimant could be allowed to care the defect and have the amendment relate back to the original filing of the claim. This would comply with the statutory construction guidelines of *Chisholm,* and would reconcile probate procedure with the liberal amendment policy of general civil procedure. *See,* Tex.R.Civ.Pro. 2 and 63.

2. *What is "the time provided by law"?*

The majority holds that the "time provided by law" of sec. 306(b) was intended to be the six months for filing claims for money set out in sec. 298(a). In my opinion, the phrase should be construed as a reference to the statute of limitations for the claim.

The majority's holding causes the claims of unsecured creditors to receive better treatment than the claims of secured creditors. To see how this happens, it is helpful to consider that a secured claim is usually undersecured and is therefore, in reality, two claims: a property interest in the collateral whose value is equal to the proceeds from the sale of the collateral, and an unsecured claim for money against the debtor whose value equals the original debt minus the proceeds of the collateral. Thus, a secured claim has priority as a class 3 claim under sec. 322 up to the amount realized from the sale of the collateral. The remainder of the debt is a class 4 unsecured claim. *Gibraltar Mortg. & Loan Corp. v. Lerman,* 346 S.W.2d 487 (Tex.Civ.App.—Waco 1961).

The six-month time period does not destroy class 4 claims filed after the six months, but merely relegates them to a lower class 5 priority, sec. 298(a). However, the construction of sec. 306(b) adopted by the majority would automatically destroy the class 4 portion of a secured claim filed more than six months after letters are granted. There is no rational public policy reason to treat the claims of secured creditors more harshly than those of unsecured creditors, and indeed, sec. 306 was enacted to benefit secured creditors. Therefore, it is unlikely the legislature intended the result that the majority's construction of the law mandates.

The Code itself does not support the interpretation adopted by the majority. Sec. 298(a) provides that class 4 claims must be presented within six months or they are relegated to class 5 status. It then says, "provided, however, that the failure of a holder of a secured claim to present his claim within said six months shall not cause his claim to be postponed," thus removing secured claims from the six-month rule for unsecured claims, "but it shall be treated as a claim to be paid in accordance with subsequent provisions of the Code." I agree with the majority that this naturally leads us to sec. 306(b), which provides that a secured claim will be treated as a nonrecourse claim against specific property, "if [it] is not presented within the time provided by law." However, I feel no compulsion to leap to the conclusion that "the time provided by law" refers to the six months

allowed by sec. 298 to obtain class 4 status for unsecured claims. There are two reasons this leap is unwarranted. First, sec. 298 specifically *excepts* secured claims from the six months, so there is no reason to think the legislators intended to undo the exception they labored to create. Second, if sec. 306(b) intended to refer to the six months of sec. 298, the drafting convention would be to refer to the Code itself, e.g., by saying "within the time provided for filing claims under the provisions of this Code," or to refer to the Code section specifically.

If the law referred to in sec. 306(b) is deemed to be the general law limiting when claims may be collected, the results would be that probate practice would reflect commercial realities and expectations rather than defeat them, and sections 298 and 306 of the Code would be better harmonized.

If sec. 306(b) is read to refer to the statute of limitations, a secured creditor's claim would be treated in probate just as it would be if the debtor were still alive. That is, the creditor could elect to go against the debtor personally (or the debtor's estate), or to strictly foreclose on the collateral in satisfaction of his claim (the sec. 306(a) election), and only when the cause of action on the claim is barred by the statute of limitations would the creditor be restricted to proceeding against the collateral only. This would avoid the anomalous result of the unsecured portion of a secured creditor's claim being destroyed if the claim is not presented within six months, while an unsecured creditor only suffers postponement, not annihilation, of his valid claim.

Construing the "law" of sec. 306(b) to be the law limiting when actions on claims may be instigated also results in a closer parallel between sec. 298 governing unsecured claims, and sec. 306 on secured claims.

Section 298(c) provides that a claim against the estate "on which a suit is barred by a general statute of limitation" may not be allowed or approved. That is, the right to collect a debt (though not the debt itself) is destroyed by operation of law. Section 306(b) provides, in an analogous manner, that if a secured claim is not presented (presentment tolls the statute of limitations, sec. 299) within the time provided by law, only the security interest in the collateral survives. The unsecured portion of the secured claim against the estate is effectively destroyed by treating the claim as a claim against the collateral without recourse to the debtor's estate generally, in accordance with sec. 306(a)(2) and sec. 306(c). This construction reflects the fact that while causes of action are extinguished by statutes of limitation, interests in property, such as liens, are unaffected. Prior to enactment of the precursor to 306(b), liens against property in probate were postponed just like unsecured claims if filed late. *See, e.g., Graham v. Vining*, 2 Tex. 433, 443 (1847). It seems likely that 306(b) was designed to prevent infringement of the property interests of secured creditors, and not to limit the secured creditors' rights against the debtor's estate generally.

In summary, a claim should be deemed presented when filed, and 306(b) should be triggered only if a claim is filed after the statute of limitations has run on it. Cessna presented its claim in a timely manner, and should be permitted to amend its claim to express its election in language satisfactory to the court below.

For the above reasons, I would sustain the appellant's first four points of error. I therefore dissent to the portion of the majority's opinion overruling these points, and concur with the remainder of the majority's opinion.